IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | No. 24-CR-640-MLG |
| ) | |
| vs. ) | |
| ) | |
| **HERBERT BEN, JR.**, ) | |
| ) | |
| Defendant. ) | |

**UNITED STATES' MOTION *IN LIMINE* TO ADMIT
DEFEENDANT'S POST-DISCLOSURE CONDUCT**

Pursuant to Federal Rule of Evidence 404(b)(2), the United States respectfully requests this Court permit the United States to elicit testimony at trial concerning Defendant's verbal and physical actions after he learned of Jane Doe 1 and 2's disclosures to their mother (R.B.) on August 20, 2022. Specifically, the United States asks to elicit evidence of the following actions, all of which evidence Defendant's guilty mind:

1. Defendant's telephonic threats to R.B. on August 20, 2022, that he would "kill everyone," which Jane Doe 1 overheard;

2. Defendant's resistive and belligerent verbal and physical conduct towards Jicarilla Apache Police Department officers during the DWI stop that occurred on August 21, 2022; and

3. Defendant's telephonic statements to his son on August 21, 2022, that Defendant intended to commit suicide.

**FACTS**

1. In the late evening hours of August 20, 2022, Defendant, R.B. (Defendant's wife), and Jane Does 1 and 2 (Defendant's stepdaughters, then ages 8 and 12, respectively) were traveling from Shiprock to their shared home in Dulce. During this car ride, R.B. and

Defendant verbally argued. R.B. and Jane Does 1 and 2 then got out of Defendant's truck in Bloomfield. Defendant drove off in his dark-colored Dodge Ram, leaving the three females.

2. While stranded in the parking lot of Farmers Market in Bloomfield, New Mexico, Jane Does 1 and 2 disclosed to R.B. that Defendant had sexually molested both of them. R.B. immediately reported Defendant to Bloomfield Police Department.

3. While R.B. was on her way to the police station that night, Defendant called R.B. "and told her he would 'kill everyone.'" (BNs 739, 763). Jane Doe 1 heard Defendant say this to R.B. several times. (BN 809). R.B. knows Defendant to have two rifles at their home. (BNs 739, 763). R.B. reported Defendant's threats to police that night.

4. An hour or so later, at 12:21 a.m. on August 21, 2022, Jicarilla Apache Police Department (JAPD) Officers Antonio Fitch and Josue Aranda located and stopped Defendant's truck, which was en route to Dulce.[1]

5. Both JAPD officers immediately noticed Defendant was drunk; his eyes were bloodshot and watery, he had an odor of alcohol emitting from his breath, and his speech was slurred. Defendant said he had not drank alcohol that night, though he later admitted he had.

6. JAPD officers asked Defendant to return R.B.'s purse, which Defendant had in his truck. Defendant told one officer "fuck you" and threw it out the window, saying, "here take it."

7. While speaking to the JAPD officers, Defendant was on the phone with his son. Police asked him to hang up the phone and step out of his truck; Defendant refused, stating he would not exit his car "because that fucking bitch is saying shit about him." The two JAPD officers thus forcibly removed Defendant from his truck as he grabbed his steering wheel

---

[1] The quotes and information that follow are taken from the police reports of Jicarilla Apache Police Department officers Fitch and Aranda, case number JA-22-0525.

to avoid being detained. According to the officers, Defendant "continued being belligerent." Officer Fitch was forced to use his Taser's drive-stun feature to handcuff Defendant. Even after being handcuffed, Defendant continued to resist officers.

8. When FBI Special Agent Nicole Montgomery later interviewed Defendant on November 9, 2022, Defendant said after he left R.B. and Jane Does 1 and 2 at Farmers Market in Bloomfield, R.B. called and told him she was going to call police and tell Jane Does 1 and 2 to lie about him. (BN 840). Defendant then called his son while driving back to Dulce to express that he intended to kill himself. (*Id.*).

## ARGUMENT

The Federal Rules of Evidence permit the admission of evidence of acts not intrinsic to the charged crime to show things like motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. Fed. R. Evid. 404(b)(2). Rule 404(b) is an inclusive rule; evidence is to be admitted if it proves something other than criminal propensity and bad character, even if the evidence also demonstrates propensity. *See United States v. Moran*, 503 F.3d 1135, 1145 (10th Cir. 2007) (citing *United States v. Cherry*, 433 F.3d 698, 701 (10th Cir. 2005) & *United States v. Tan*, 254 F.3d 1204, 1208 (10th Cir. 2001)). Rule 404(b)'s list of proper purposes is "illustrative, not exhaustive." *United States v. Henthorn*, 864 F.3d 1241, 1248 (10th Cir. 2017).

The Tenth Circuit employs a four-part test to determine if evidence is admissible under Rule 404(b):

1. It must be offered for a proper purpose;
2. It must be relevant;
3. A court must make a Rule 403 determination of whether the probative value of the similar acts is substantially outweighed by its potential for unfair prejudice; and
4. Pursuant to Rule 105, the court shall, upon request, instruct jurors that other-acts evidence is to be considered only for the purpose for which it was admitted.

U.S. v. Herbert Ben, Jr.
*United States' Motion* In Limine *to Admit Defendant's Post-Disclosure Conduct*

*United States v. Smalls*, 752 F.3d 1227, 1237 (10th Cir. 2014); *see also Huddleston v. United States*, 485 U.S. 681, 691-92 (1988).[2]

**1.    Defendant's telephonic threats to R.B. that he would "kill everyone."**

  A.    Proper purpose & relevance

After Defendant learned his felonious conduct towards Jane Does 1 and 2 would be reported to police and thus made known to the world, Defendant plainly told R.B. over the phone that he intended to "kill everyone." A drastic threat like this one, made at or near the time Defendant first learned of R.B.'s intent to expose his serious criminality to law-enforcement authorities, shows consciousness of Defendant's guilt. *See United States v. Billy*, 659 F. Supp. 3d 1275, 1277 (D.N.M. 2023) (Riggs, J.) (stating "[t]he Tenth Circuit has held that 'a defendant's threat against a potential witness is generally admissible under Rule 404(b)' because 'such threats show the defendant's intent to prevent the witness from testifying, and are thus an implicit acknowledgment of the defendant's guilt'"). This is particularly true here, considering Defendant, his mother, and his father all faced federal charges for molesting another young female in the District of New Mexico. (Case no. 12-cr-1248 MV). This fact shows Defendant is acutely aware of the decades-long potential penalties accompanying federal child-sex-abuse statutes.

  B.    Rule 403

"[E]xclusion of evidence under Rule 403 that is otherwise admissible under the other rules is an extraordinary remedy and should be used sparingly." *United States v. Tan*, 254 F.3d 1204, 1211 (10th Cir. 2001) (citation and quotation omitted). The probative value of this testimony is high—right after Defendant knew his sexual abuse of his two young stepdaughters would be reported to police, he announced to R.B. that he would presumably kill her, Jane Doe 1, and Jane

---

[2] Should Defendant request such a limiting instruction (factor #4, above), the United States would not object.

Doe 2. The United States certainly is not blind to the possibility jurors will consider this incident for an improper purpose. Nevertheless, the United States will, prior to trial, be candid with the Court and Defense counsel concerning the bounds of its questioning, so as to properly focus its witnesses (R.B. and Jane Doe 1), eliciting no more than necessary to make its point. This, coupled with a forceful limiting instruction, will be enough to ensure a just determination by jurors. *See United States v. Ahidley*, No. 06-cr-2056, 2013 WL 12202346, at *4 (D.N.M. Jan. 17, 2013) (Brack, J.) (unpublished) (discussing steps to alleviate concerns that Rule 404(b) evidence will mislead or confuse jurors under Rule 403).

**2.   Defendant's resistive and belligerent conduct towards Jicarilla Apache Police Department officers during his DWI arrest.**

   A.   Proper purpose & relevance

When JAPD officers stopped and confronted Defendant soon after Defendant learned that R.B. intended to make his sexual abuse known, Defendant, to put it mildly, resisted police questioning and his eventual arrest. Again, this evidence is relevant to establish Defendant's consciousness of guilt. *See United States v. Martinez*, 681 F.2d 1248, 1256 (10th Cir. 1982) (approvingly citing *J. Wigmore on Evidence* for the notion that "[i]t is universally conceded today that the fact of an accused's flight, escape from custody, resistance to arrest, concealment, assumption of a false name, and related conduct, are admissible as evidence of consciousness of guilt, and thus of guilt itself"); *United States v. Barros*, No. 05-cr-2048, 2007 WL 9724504, at *4 (D.N.M. Aug. 10, 2007) (Armijo, J.) (unpublished) (noting Tenth Circuit precedent supporting the premise that evidence of a defendant's resistance to arrest is relevant and admissible for the purpose of showing his consciousness of guilt; further noting "this fact becomes even more probative when the defendant knows that an officer is seeking to arrest him at the time of his resistance or flight, and when such resistance or flight occurs shortly after the commission of the

crime or the defendant's discovery that he is accused of the crime.").

B. Rule 403

Defendant stands accused of sexually molesting his two minor stepdaughters. Under these circumstances, it is logically hard to believe jurors would convict Defendant of the objectively much-more-serious-crimes of which he stands charged based purely upon his resistive conduct during a DWI stop. Moreover, jurors can decide whether Defendant's resistance to his DWI arrest stems from his refusal to comply with a simple DWI investigation, or from his arrest and the questioning that will accompany a sexual-assault investigation. See *Barros*, 2007 WL 9724504, at *5 (citing with approval an Eleventh Circuit case opining that "it was within the jury's province to decide whether consciousness of guilt sprung from the crimes charged in that case or from other, uncharged crimes"). Nevertheless, the United States is always willing to offer and abide by a reasonable limiting instruction that explains the relevance and limits of this evidence.

3. **Defendant's statements to his son that he wanted to kill himself.**

A. Proper purpose & relevance

FBI Special Agent Nicole Montgomery will provide the necessary foundation for Defendant's November 2022 recorded interview and, by extension, Defendant's August 21, 2022, statement to his son that he wanted to commit suicide as he drove to Dulce, at or near the time he learned his criminality would be reported to police by R.B. As Agent Montgomery astutely pointed out during this interview, Defendant's conduct is counterintuitive because when R.B. told Defendant she was going to call police, Defendant's first response was "I'm going to kill myself," not "I'm going to tell my side of the story." Again, all of this is relevant to show Defendant's consciousness of guilt, *i.e.*, evidence of his own guilty mind. *See United States v. Cody*, 498 F.3d 582, 591 (6th Cir. 2007) (holding that suicidal ideations may be admissible as relevant evidence of consciousness of guilt because such statements are "a logical extension of long-accepted rules of evidence that treat suicide as a form of flight"); *but*

*see United States v. S. Martinez*, No. 21-cr-1934, 2023 WL 8480113, at *4-5 (D.N.M. Dec. 7, 2023) (Vazquez, J.) (unpublished), *rev'd and remanded on other grounds*, *United States v. S. Martinez*, 122 F.4th 389 (10th Cir. 2024) (refusing, on relevance grounds, to permit the United States to introduce evidence that a defendant expressed suicidal ideations after killing his longtime girlfriend because those expressions were not evidence of consciousness of guilt, but statements regarding the defendant's desire to join his girlfriend in the afterlife).

B.     Rule 403

While the United States characterizes Defendant's statement to his son as evidencing Defendant's guilty mind, Defense counsel might reasonably counter that this statement is simply the lamentations of a heartbroken man whose wife has betrayed him and whose family is crumbling under false accusations. This alone should show this Court that the probative value of these statements is not substantially outweighed by their danger of unfair prejudice. Defendant and his attorneys can easily re-characterize this statement during cross-examination and argument as genuine feelings of loss.

## REQUEST FOR RELIEF

The United States asks this Court to elicit evidence of these actions, all of which evidence Defendant's guilty mind:

1. Defendant's threat to R.B. that he would kill everyone;
2. Defendant's resistive verbal and physical conduct towards police during the DWI stop; and
3. Defendant's statements to his son that he wanted to kill himself.

*// Signature block on following page //*

7

U.S. v. Herbert Ben, Jr.
*United States' Motion* In Limine *to Admit Defendant's Post-Disclosure Conduct*

Respectfully submitted,

**TODD BLANCHE**
Deputy Attorney General

**RYAN ELLISON**
First Assistant United States Attorney

_____
Zach Jones
Amy Mondragon
Assistant United States Attorney
201 3rd Street NW, Ste. 900
Albuquerque, New Mexico 87102

I HEREBY CERTIFY that on January 19, 2026, I filed the foregoing electronically through the CM/ECF system, which caused counsel of record to be served by electronic means, as more fully reflected on the Notice of Electronic Filing.

_____
Zach Jones
Assistant U.S. Attorney

8